CROSKERY *v.* BUSCH.

1. TAXES—VOID SALE—LIEN OF STATE—RIGHTS OF PURCHASER.
    A purchaser at a void tax sale does not, in the absence of statute, acquire the lien of the State by his purchase.

2. SAME—PAYMENT OF SUBSEQUENT TAXES.
    Taxes subsequently paid by the holder of a void tax title are voluntary payments, and cannot be recovered from the owner of the land.

3. SAME—COMPENSATION FOR IMPROVEMENTS—DISPOSSESSION.
    The dispossession of a claimant under a void tax deed need not be by suit, in order to entitle him to compensation for improvements under section 104 of the tax law of 1893 (Act No. 206, Pub. Acts 1893).

4. SAME—SUFFICIENCY OF EVIDENCE.
    Evidence that such a claimant cleared several acres of the premises, which were theretofore unimproved, built a brush fence around the clearing, and raised one or more crops thereon, establishes a possession sufficient to entitle him to the benefit of said section, where he was afterwards excluded from the land by the act of the original owner.

Appeal from Gladwin; Sharpe, J. Submitted February 1, 1898. Decided March 15, 1898.

Bill by Robert Croskery and James Croskery, Jr., against William C. Busch and Jane A. Busch to enforce a lien upon land for taxes and improvements. From a

decree for complainants, defendants appeal. Modified and affirmed.

*Campbell & Foster*, for complainants.

*F. L. Prindle*, for defendants.

HOOKER, J. The complainants claim to have taken possession under a purchase of State tax lands, sold for the taxes of 1889. Upon being dispossessed, they filed the bill in this suit to recover under section 104 of Act No. 206 of the Public Acts of 1893 for improvements made upon the premises, and to recover the amount paid as purchase price of said lands, and for taxes subsequently becoming a charge thereon. Three questions require consideration,—the *first* relating to the purchase price; *second*, other taxes paid; and, *third*, the right to receive compensation for improvements.

The complainants' claim is based upon the proposition that they acquired the lien of the State by their purchase, notwithstanding the invalidity of the title, which is due to the failure of the treasurer to make and file a report of sale. *Millard* v. *Truax*, 99 Mich. 157; *Jenkinson* v. *Auditor General*, 104 Mich. 34. Counsel cite the cases of *Hoffman* v. *Harrington*, 33 Mich. 392, *Nims* v. *Sherman*, 43 Mich. 45; and *Morse* v. *Byam*, 55 Mich. 594, which hold that the purchaser at an irregular foreclosure sale acquires all of the rights of the mortgagee. They say that, under the tax law, the State has a lien for the taxes upon the land, and, if the proceedings *are irregular, the State may take new proceedings to sell* the land (citing *Humphrey* v. *Auditor General*, 70 Mich. 292), and urge that, as this right accrues to the State when it has not seasonably enforced collection, it is transferred to the purchaser of the land from the State after purchase, if it turns out that the State had not acquired a title.

We have been to some trouble to collect and examine

the cases which permit the purchaser to recover the tax from the owner where his title fails. Some of them are cases where, on a bill to quiet title, payment of the taxes was made a condition of relief. Such a case is *Jenkinson* v. *Auditor General, supra.* Such holding rests upon the maxim that "he who seeks equity must do equity," and is not necessarily conclusive in a case where a suit is brought to declare and enforce a lien, as in this case. While in a number of States the purchaser at an irregular sale is permitted to recover the amount paid, where the sale is declared illegal, an examination shows that in nearly, if not quite, all of them, statutes are the foundation for the relief. This will be found true in Nebraska, Arkansas, Mississippi, Indiana, and Kansas. *Peet* v. *O'Brien*, 5 Neb. 360; *Bryant* v. *Estabrook*, 16 Neb. 222; *Hunt* v. *Curry*, 37 Ark. 104; *Cogburn* v. *Hunt*, 56 Miss. 724; *Flinn* v. *Parsons*, 60 Ind. 573; *Stephenson* v. *Martin*, 84 Ind. 160; *Fairbanks* v. *Williams*, 24 Kan. 19; *Russell* v. *Hudson*, 28 Kan. 100; *Arn* v. *Hoppin*, 25 Kan. 708. Not only are the above cases based upon statutes, but some of them indicate that a statute is essential to recovery. In the Mississippi case cited, it is said: "Unless, therefore, there is some provision of statute law upon which the relief prayed can be granted, it is inadmissible, under the general principles underlying the law relative to taxation,"—citing Blackw. Tax Titles (4th Ed.), 446, 493 (star p.); Cooley, Tax'n, 242; Burroughs, Tax'n, 366. And see Cooley, Tax'n (2d Ed.), 546. Again, in *Cogburn* v. *Hunt*, 57 Miss. 681, the remedy was refused where the statute had provided another. Again, in *Stephenson* v. *Martin*, 84 Ind. 161, it is said: "The remedy * * * is wholly statutory." See, also, *People* v. *Henckler*, 137 Ill. 580, and *Finegan* v. *Mayor, etc., of New York*, (Sup.) 38 N. Y. Supp. 358, cited by counsel.

The State of Iowa furnishes many cases pertaining to the subject, and the inference may be drawn from some of the later ones that the right of recovery is not statu-

tory; but we find, by looking at the earlier cases, that statutes existed giving the purchaser at irregular sales a right to recover the valid taxes. *Claussen* v. *Rayburn,* 14 Iowa, 136; *Byington* v. *Woods,* 13 Iowa, 17; *Corbin* v. *Hill,* 21 Iowa, 70; *Everett* v. *Beebe,* 37 Iowa, 452; *Light* v. *West,* 42 Iowa, 142; *Besore* v. *Dosh,* 43 Iowa, 211; *Sexton* v. *Henderson,* 45 Iowa, 160; *Thompson* v. *Savage,* 47 Iowa, 524. The last case cited indicates that all of these cases were based on statutes, as it not only mentions the statute then in force, but earlier ones, and goes so far as to apply the rule in a case where no levy of taxes had been made, and where, as said in the opinion, "the county and State had no claim for taxes for that year."

As against this apparent uniformity, we are cited to no case which sustains the proposition of the complainants; and in our own case of *Humphrey* v. *Auditor General,* 70 Mich. 292, 296, where taxes assessed, but not seasonably collected through sale, were sought to be collected by sale under a statute authorizing a sale, it was said: "The taxes assessed were allowed to become a lien against complainants' lands, *and they have so continued ever since; but, for the want of proper legislation, their collection could not be enforced until the law of 1887 took effect.*" Thus, it seems that this lien in the hands of the State could not be enforced in equity, and a statute was necessary to enable the State to enforce its existing lien. Could an assignee of the State be in any better position in this respect? This is but a recognition of the doctrine that taxes are not matters of contract, and that only statutory measures are to be resorted to for their collection. Cooley, Tax'n (1st Ed.), 300; Id. (2d Ed.) 15, 16; *Eyke* v. *Lange,* 104 Mich. 26.

It is manifest that the subsequent payment of taxes was voluntary, and cannot be recovered.

Many of the States have provided by statute that the purchaser shall acquire the lien of the State, and may enforce it if title fails. These are statutory provisions in

the furtherance of justice, and it is to be regretted that they have been dropped from our statutes. They are to be found in the tax laws of 1869 and 1885 (1 How. Stat. § 1167; 3 How. Stat. § 1169*w7*), but counsel for the complainants concede that they are not to be found in later tax laws. It is contended that this right exists under these laws by necessary implication from the fact that chancery is given jurisdiction to adjudicate upon the validity of taxes before sale, and the further provision, in section 70 of the tax law of 1893 (Act No. 206), that "the practice with reference to setting aside such sale shall be the same, so far as applicable, as in a sale in equity on the foreclosure of mortgages." We think this inference is not warranted. The provision last cited should be held to apply only to the procedure in the suit brought by the auditor general, where, in that proceeding, the sale is attacked.

The remaining question relates to compensation for the improvements. Section 104 of the tax law of 1893 provides:

"If any person dispossessed of lands purchased in pursuance of the provisions of this act shall have made improvements thereon, he shall be entitled to recover what such improvements are worth, and shall have a lien on such lands therefor, and may enforce the same by bill in equity where no other provision is made by law."

The evidence shows that the land purchased by the complainants was an unimproved 40-acre parcel, adjoining the defendants' improved farm, which was occupied by a tenant. The complainants cleared a few acres, and surrounded it with a brush fence, and raised one or more crops there. The tenant was aware of this, and one of the defendants saw them dragging there, as he passed by upon the cars, and is said to have remarked that complainants could clear up his land for him if they wanted to. Subsequently he caused an emyloyé of the complainants to be prosecuted for trespass, the result being a conviction. We are of the opinion that the circuit court was

right in its conclusion that the complainants had possession of a part, at least, of this parcel, and that they were dispossessed, and that they occupied and improved the same under the tax deed, in good faith. The evidence as to the value of the improvements is not as clear as we could wish, but, such as it is, it supports the conclusion of the learned circuit judge.

We are constrained to modify the decree by striking out the amount allowed for taxes and purchase price of said lands. As to the allowance of $125 for improvements, the decree of the circuit court is affirmed. The complainants are entitled to the costs in the circuit court. Neither party will be allowed costs of this court.

The other Justices concurred.